UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

    - v -

JOSEPH SHARPLEY,

        Defendant.

04-CR-388 (NAM)

_____

APPEARANCES                                                OF COUNSEL

ALEXANDER BUNIN                                       Lisa A. Peebles. Esq.
Federal Public Defender
*Attorney for Defendant*
Clinton Exchange, 3rd Floor
4 Clinton Street
Syracuse, New York  13202

GLENN T. SUDDABY                                      John G. Duncan, Esq.
UNITED STATES ATTORNEY                        Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 South Clinton Street
Syracuse, New York  13261-7198

NORMAN A. MORDUE, District Judge

## MEMORANDUM- DECISION AND ORDER

### I.  INTRODUCTION

      Defendant , Joseph Sharpley, was convicted on March 30, 2005, after a two day trial of possession with intent to distribute crack cocaine, possession of a firearm in relation to a drug trafficking offense and being a felon in possession of a firearm in violation of 21 U.S.C. § 841(a)(1); 18 U.S.C. § 924(a) and 18 U.S.C. § 922(g) respectively.  Defendant,, moves for an order setting aside a jury verdict and for an order of acquittal pursuant to Fed. R. Crim. P. 29(c) and/or a new trial pursuant to Fed. R. Crim. P. 33.  Defendant's motion

raises two arguments: first, that there was insufficient evidence as a matter of law to convict him of carrying a firearm during and in relation to drug trafficking; and, secondly, that the Court erred in permitting the government to call a narcotics detective as an expert witness concerning the propensity of drug dealers to use firearms in furtherance of their illicit activities.

**II.     DISCUSSION**

A.     <u>Government's Proof at Trial</u>

During the trial in this case, City of Syracuse Police Officer Nelson Aquino and fellow Officer Jimmy Johnson testified that on the very early morning hours of June 23, 2004, they were patrolling in plain clothes in an unmarked patrol car when they observed defendant and another individual standing on the corner of Delaware and Dudley Streets. This was an area known by the officers to be an "open air drug market" marked by high crime and heavy drug trafficking activity. The officers looped around, passing the corner again and noted the two men were still standing in the same spot on the corner. After passing the area for a third time and noting the continued presence of defendant and the other man, the officers pulled their vehicle over to the curb to attempt to talk to the two men. Before the officers even got out of their vehicle, defendant backed up, reached into the waistband of his pants, turned and began walking away. When Officer Aquino called to defendant and asked him to stop for questioning, defendant began to run. As Officer Aquino chased defendant, he observed a silver handgun in defendant's hand. Eventually, defendant tossed the gun over a fence during his flight. When the officers finally seized defendant and placed him under arrest, they discovered marijuana and crack cocaine

concealed on his person.

Defendant did not testify at trial. However, his counsel attempted to persuade the jury, through oral argument and cross-examination of government witnesses, that defendant had sustained stab wounds to his back and shoulder prior to his encounter with police. Based thereupon, defense counsel argued that defendant had been carrying the gun in this case for personal protection. Defense counsel also raised via cross examination the fact that police on the scene did not observe any communication or exchange between defendant and the unidentified individual standing on the corner with him. Further, defense counsel pointed out that defendant had some over the counter pain medication on his person at the time of his arrest and contended that he purchased it at the convenience store in the vicinity of where he was arrested in just prior to encountering police. Thus, defense counsel contended that defendant was not loitering on the corner of Delaware and Dudley Streets in furtherance of drug trafficking; he was simply there because he was seriously injured and had gone to the nearby store to purchase Motrin.

B.      Sufficiency of Evidence

Defendant contends that the government failed to prove any nexus between the firearm he was carrying on the night of his arrest and the drug trafficking offense. To wit, defendant argues that the only evidence which established that possession of the gun by defendant was "in furtherance" of a drug trafficking crime was "simply the fact that Mr. Sharpley was also in possession of crack cocaine." In deciding a motion for judgment of acquittal, a court must view the evidence presented in the light most favorable to the government, and draw all reasonable inferences in its favor. *See United States v. Puzzo*, 928

F.2d 1356, 1361 (2d Cir.1991).  "[T]he court must be careful to avoid usurping the role of the jury" by substituting its own determinations of credibility or relative weight of the evidence.  *United States v. Guadagna,* 183 F.3d 122, 129 (2d Cir.1999).  A court "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."  *United States v. Mariani,* 725 F.2d 862, 865 (2d Cir.1984) (quoting *United States v. Taylor,* 464 F.2d 240, 243 (2d Cir.1972)) (internal quotation marks omitted).  "[I]f the court 'concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court] must let the jury decide the matter.' "  *Guadagna,* 183 F.3d at 129 (quoting *Curley v. United States,* 160 F.2d 229, 233 (D.C.Cir.1947)) (first alteration added).

With these principles in mind, the Court must uphold the jury's verdict in this case if it finds that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A defendant shoulders a "heavy burden" in challenging the sufficiency of evidence supporting a conviction, *United States v. Matthews,* 20 F.3d 538, 548 (2d Cir.1994), and the Court finds that defendant has failed to meet it in the instant matter.  The Court notes that defense counsel made the arguments referenced herein along with others equally compelling to the jury in connection with casting doubt over the government's theory that defendant's presence on a street corner in an "open air drug market" at 1:30 in the morning with another individual and his possession of both 113 individually wrapped packages of crack cocaine and a loaded firearm was proof of his involvement in illicit drug activities.  However, it is

the function of the jury to determine the credibility of witnesses, weigh evidence, and draw "justifiable inferences of fact from proven facts."  *Curley,* 160 F.2d at 232-233.  The Court is confident that the jury did so in this case and that the evidence presented by the government was sufficient to establish defendant's guilt on each count beyond a reasonable doubt.

C.	Government's Use of Expert Witness

Defendant also asserts that it was error for the Court to allow the government to call Detective David Proud from the Syracuse Police Department to testify as an expert witness concerning the methods used by drug dealers to distribute crack cocaine and the use of firearms by drug dealers in conducting business.  To wit, Detective Proud was called to explain that drug dealers most commonly wrap small amounts of crack cocaine in plastic for distribution and that in his experience with investigating drug trafficking activity in Syracuse, that dealers very often are in possession of firearms.

Defendant argued before and during the trial that he was not guilty of using of a firearm during and in relation to commission of the predicate crime of drug dealing.  Defendant, by his counsel, affirmatively disputed that the gun he tossed over a fence on the night of his arrest was used in furtherance of his alleged drug trafficking crimes.  Indeed, his counsel suggested to the jury that the gun might have been in defendant's possession for the purpose of personal protection given his stab wounds on the night of his arrest.  Based upon the Second Circuit's determination in *United States v. Taylor*, 18 F.3d 55, 60 (2d Cir. 1994), the expert testimony regarding drug dealers' use of firearms was admissible to rebut his claims

Defendant cites *United States v. Castillo*, 924 F.2d 1227, 1234-35 (2d Cir. 1991), for the proposition that it is reversible error for a trial court to allow the government to call an expert witness to testify as to matters readily ascertainable by a jury. However, narcotics operations are a proper subject for expert testimony under Federal Rule of Evidence 702, as long as the testimony's subject matter "is beyond the ken of the average juror." *Castillo,* 924 F.2d at 1232. Police officers often know more about narcotics operations than do jurors. *See id.*; *see also United States v. Brown,* 776 F.2d 397, 400 (2d Cir. 1985). It is not error to permit the government to elicit expert testimony from law enforcement witnesses as long as the testifying officer does not bolster his credibility by offering personal knowledge of a defendant's criminal activities. *See United States v. Simmons*, 923 F.2d 934, 947 (2d Cir.), *cert. denied,* 500 U.S. 919, and *cert. denied sub nom. Monsanto v. United States,* 502 U.S. 943 (1991).

In *Castillo,* the Court found that testimony regarding these issues could be evaluated by a jury based on common sense without resort to expert testimony. *See id.* Indeed, the expert witness in *Castillo* testified that drug dealers use scales to weigh drugs after the undercover police officer called as a fact witness had already testified that he purchased a quantity of drugs from defendant after they were weighed on a scale. Further, the undercover officer in Castillo testified that he was forced by defendant to snort some of the cocaine he purchased as proof that he was not working for the police. Expert testimony regarding the propensity of drug dealers to force buyers to snort cocaine thus improperly bolstered the fact witness's testimony.

Here, the government's fact witnesses, Officers Aquino and Johnson, testified

simply that defendant acted suspiciously when they approached to speak to him, tossed a loaded gun over a fence while they were chasing him, and had over one hundred individually wrapped packages of crack cocaine on his person when he was finally arrested. Detective Proud's testimony regarding common practices of narcotics dealers insofar as packaging, pricing and street sales of drugs and carrying of firearms did not therefore improperly "mirror" or bolster the testimony of the government's fact witnesses. Detective Proud simply "explained how these items are used in typical drug transactions." *Headley v. Tilghman*, 53 F.3d 472, 475 (2d Cir. 1995). Indeed, Detective Proud explained that drugs are typically packaged in plastic to make them easily transportable by dealers. The testimony offered by Detective Proud concerning the weight and value of the crack cocaine seized from defendant, together with information concerning typical personal use of drugs, was relevant to proving that the drugs were intended for distribution. *See United States v. Tapia-Ortiz,* 23 F.3d 738, 742 (2d Cir. 1994). Detective Proud also testified that drug dealers who commonly carry large quantities of drugs and/or cash also typically carry handguns which can be easily concealed on their person to protect themselves since drug dealers can rarely report robberies to the police.

      Detective Proud's testimony was also properly admitted to rebut defendant's claim that he was not involved in drug trafficking, but was merely standing on the street corner bleeding after having purchased Motrin at a nearby convenience store. It is well-settled that when an accused's defense is that he was on the scene of a drug trafficking crime but uninvolved in criminal activity, expert testimony may be introduced to explain the defendant's role in the transaction. *See United States v. Brown,* 776 F.2d at 400-02 (no

error in admitting testimony about typical drug buy when defendant claimed he was on scene but unaware of any drug transaction). *See also Headley v. Tilghman*, 53 F.3d at 475 (expert testimony admitted to show defendant's possession of items typically used in drug dealing and presence in "distribution house" suggested likely connection with drug operation); *United States v. Tapia-Ortiz,* 23 F.3d at 742 (expert testimony may be used on some occasions to explain non-esoteric matters "when the defense seeks to discredit the government's version of events as improbable ciminal behavior.")

Based thereupon, the Court is assured no error occurred in connection with allowing a police expert to testify.

### III.  CONCLUSION

Based on the foregoing, the Court DENIES defendant's motion for a judgment of acquittal as well as his motion for a new trial.

IT IS SO ORDERED.

Dated: June 23, 2005
 Syracuse, New York

Norman A. Mordue
U.S. District Judge

-8-